United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| SCOTT JAMES HEISER,<br>    Plaintiff,<br>    v.<br>NANCY A BERRYHILL,<br>    Defendant. | Case No. 17-cv-05991-RMI<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 25, 28 |

Plaintiff, James Scott Heiser, seeks judicial review of an administrative law judge ("ALJ") decision denying his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council, thus, the ALJ's decision is the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 5 & 10), and both parties have moved for summary judgment (dkts. 25 & 28). For the reasons stated below, the court will grant Plaintiff's motion for summary judgment, and will deny Defendant's motion for summary judgment.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## PROCEDURAL HISTORY

On November 13, 2013, Plaintiff filed applications for disability insurance benefits under Title II, and for supplemental security income under Title XVI, alleging an onset date of November 3, 2011 as to both applications. *See Administrative Record "AR"* (dkt. 14) at 23. The ALJ denied the application on March 16, 2016. *Id*. at 36. The Appeals Council denied Plaintiff's request for review on August 23, 2017. *Id*. at 1-6.

## SUMMARY OF THE RELEVANT EVIDENCE

In 1986, Plaintiff was involved in an automobile accident, as a result of which he suffered a series of brain injuries and hematomas. *Id*. at 486. After undergoing brain surgery involving craniotomy, Plaintiff developed secondary infections and abscesses, necessitating further brain surgery and, ultimately, a cranioplasty (a common neurosurgical procedure for the repair of the skull vault by insertion of an object such as bone, metal, or plastic). *Id*. Since that time, Plaintiff has suffered recurrent seizures. *Id*. at 362. Subsequently, on November 3, 2011, Plaintiff was involved in another automobile accident, as a result of which he began to suffer worsening neck pain that would radiate to his extremities where it was attended with numbness in his fingers. *Id*. at 416, 485. To address his persistent pain, Plaintiff eventually underwent spinal surgery in 2013. *Id*. at 367

*Plaintiff's Pain and Function Reports:*

Among the evidence submitted by Plaintiff in support of his disability claim were a pain and symptoms report and a function report. Therein, Plaintiff noted that he suffers from back and neck pain, which he experiences daily, and which routinely interferes with his sleep. *Id*. at 294.

Specifically, Plaintiff noted that the neck and back pain are exacerbated by repetitive activities, by fatigue or stress, and by bending or twisting. *Id*. 294-95. Plaintiff also noted that his conditions affect his ability to lift, bend, or squat. *Id*. at 301.

*Plaintiff's Hearing Testimony:*

Plaintiff began his testimony at the hearing before the ALJ by relating that he lives with his adolescent daughter, and that he requires certain public assistance for subsistence due to his inability to work. *Id*. at 47-49. During the hearing, the ALJ asked Plaintiff what keeps him from working, and why he considers himself disabled. *Id*. at 52. Plaintiff responded that whenever he is engaged in a strenuous activity, his neck and back get "really stiff," noting that he has never fully recovered from the brain injuries associated with his 1986 automobile accident. *Id*. at 52-53. Plaintiff added that his seizures have persisted, and that he has also been diagnosed with "right visual neglect," a neuropsychological condition resulting from the damage sustained by one hemisphere of his brain. *Id*. at 53-54. While Plaintiff was unable to estimate the frequency of his continuing seizures, he did relate that he experiences seizures when he hasn't had enough rest, or is otherwise tired or under stress. *Id*. at 54. As for lifting and carrying, Plaintiff testified that he "can do some, but not a great deal," but that his back and neck have been experiencing pain ever since his cervical fusion surgery. *Id*. at 57. Plaintiff added that while it was true that he could still lift a bag of groceries and carry it across the room – grocery shopping was especially painful because it involved the frequent moving of his neck, which was a constant source of pain. *Id*. at 58-59. Further, Plaintiff testified that he experiences pain in his back, his left shoulder, coupled with numbness and tingling in his left wrist. *Id*. at 59. As to the seizures, Plaintiff described the onset of each seizure episode as starting with a feeling of weakness in his right arm, followed by a perception that his mind "kind of drifts," after which Plaintiff would "twist and [] fall to the ground . . . I'll fall to the ground and I'll shake." *Id*. at 60. Plaintiff had experienced such an episode, while in the shower, as recently as two weeks prior to the hearing. *Id*. at 60.

*Medical Evidence:*

A few weeks after his 2011 automobile accident, Plaintiff was treated by Kurt Osborn, M.D., of the Humboldt Neurological Medical Group in Eureka, California. *Id*. at 387. Dr.

3

Osborn's treatment notes reflect that Plaintiff had been involved in an accident where a car had pulled out from a side road and struck Plaintiff's vehicle in a broadside "T-bone" collision during which suffered another impact to his head as well as suffering "soft tissue injuries of his neck, left shoulder, and left arm," coupled with "numbness between his thumb and index finger." *Id*. A few months later, Dr. Osborn wrote that Plaintiff was "still suffering some effects of a motor vehicle accident . . . [h]e still has irritation of his neck, left shoulder, and sometimes down his left arm when he turns his neck a certain way." *Id*. at 386. Plaintiff continued to suffer from neck and shoulder pain, for which he underwent a series of epidural injections to his spine. *Id*. at 424-25, 427-28. However, despite the temporary relief, Plaintiff continued to suffer from headaches, neck pain, and numbness in his left arm. *Id*. at 483, 384. As noted at a December 2012 follow-up visit with his treating neurologist, Plaintiff was still in pain. *Id*. at 381.

To address this persistent pain, Plaintiff was scheduled for spinal surgery, in the nature of a cervical discectomy and fusion, to take place on May 22, 2013. *Id*. at 367. However, in an astonishing turn of bad fortune, three days prior to that surgery, Plaintiff was involved in yet another automobile accident, this time, while turning his head to look at a garage sale. *Id*. at 376. Plaintiff experienced a partial seizure after the accident. *Id*. The surgery went ahead as scheduled. *Id*. at 366-69. Nevertheless, months later, at a neurosurgery follow-up visit, it was noted that Plaintiff continued to suffer from persistent neck pain and hand numbness. *Id*. at 472. In November of 2013, Plaintiff's neurosurgeon noted that "[w]e recommend [Plaintiff] to avoid repetitive craning or twisting of the neck or above the shoulder activities." *Id*. at 470. Lastly, in August of 2015, Plaintiff underwent a comprehensive ocular examination and was diagnosed with "an almost complete right-sided hemianopsia." *Id*. at 700-702. Hemianopsia is a condition associated with blindness in a portion of the field of vision caused by injury to the brain.[1]

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically

---

[1] *See* Website of the National Eye Institute at the National Institute of Health (last checked 03/19/2019): https://nei.nih.gov/faqs/neurological-hemianopsia-or-hemianopia

4

determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.[2] The ALJ must consider all evidence in the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five-step sequential evaluation process to determine whether the claimant is disabled (*see id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. *AR* (dkt. 14) at 24-35. At Step One, the claimant bears the burden of showing she has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *See id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. *AR* (dkt. 14) at 25.

At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered from the following severe impairments: traumatic brain injury; status post cervical fusion; seizure disorder; and right hemianopsia. *AR* (dkt. 14) at 25.

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing his impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four.

---

[2] The regulations for supplemental security income (Title XVI) and disability insurance benefits (Title II) are virtually identical though found in different sections of the CFR. For the sake of convenience, the court will generally cite to the SSI regulations herein unless noted otherwise.

5

*See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. *AR* (dkt. 14) at 26-28. Next, the ALJ determined that Plaintiff retained the RFC "to perform light work" with certain physical and environmental limitations. *AR* (dkt. 14) at 28-34.

At Step Four, the ALJ determined that Plaintiff is unable to perform his past relevant work as a construction worker. *AR* (dkt. 14) at 34. Lastly, at Step Five, the ALJ concluded that based on the testimony of the VE, and the ALJ's formulation of the RFC, that Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, such as dishwasher, garment presser, and dining room attendant; and thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from November 3, 2011, through the date of the issuance of the ALJ's decision, March 16, 2016. *AR* (dkt. 14) at 35-36.

## ISSUESS PRESENTED

Plaintiff presents two issues for review. The first assigns error to the ALJ's rejection of Plaintiff's symptom testimony in the absence of legitimate reasons supported by substantial evidence in the record. *Pl.'s Mot.* (dkt. 25) at 11-17. Plaintiff's second issue assigns error to the ALJ's failure to account for Plaintiff's hemianopsia in formulating the RFC. *Id*. at 17-20.

## DISCUSSION

### Plaintiff's Symptom Testimony

Plaintiff submits that the ALJ improperly rejected his symptom testimony; namely, Plaintiff's account that he was unable to work primarily because of pain. *Id*. at 12. More specifically, Plaintiff assigns error to the ALJ's vague and indeterminate finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record." *Id*. at 13 (quoting the ALJ decision). Plaintiff contends that it was also error for the ALJ to discount Plaintiff's symptom testimony based on the notion that Plaintiff was not taking pain medication – principally, because Plaintiff's hesitancy regarding pain medication was documented as having been rooted in a concern with possible interference with his seizure medication. *Id*. Plaintiff also assigns error to the ALJ's rejection of his symptom testimony on grounds that the record indicated that Plaintiff

6

was able to participate in certain incidents of daily life such as taking out the trash, preparing meals, grocery shopping, and helping his daughter with her homework. *Id*. at 15. Lastly, error is also assigned to the ALJ's reliance upon Plaintiff's expression of interest in engaging in a job retraining program at some point in the future as somehow indicative of Plaintiff's current physical and mental ability to work despite the impairments. *Id*. 15-16.

Defendant responds by arguing that the ALJ correctly found that the objective evidence in the record did not support Plaintiff's allegations of pain because Plaintiff was not taking pain medication; because objective images showed only mild to moderate degenerative conditions in Plaintiff's cervical spine; because he was observed on certain occasions as having full strength and range of motion in his extremities; and, because he once reported to his surgeon that his pain level was relatively low on that particular occasion. *Def.'s Mot.* (dkt. 28) at 14-15. Thus, Defendant submits that it was reasonable for the ALJ to place reliance on the fact that Plaintiff did not take prescription pain medication in order to reasonably discount his testimony regarding pain. *Id*. at 15. Further, Defendant adds that the ALJ reasonably found that the record indicated that Plaintiff's seizure activity was well under control with medical intervention; and, that Plaintiff's reported activities of daily living, coupled with his willingness to seek employment, indicated impairments that interfere with Plaintiff's functioning, but not to such an extent as to render him disabled. *Id*. at 15-20.

Regarding the issue of his pain medication, Plaintiff replies that the existence and extent of the pain from which he suffered was overwhelmingly documented in the medical record in that he even underwent invasive procedures such as epidural injections and spinal surgery as part of his attempts to find pain relief. *Pl.'s Reply* (dkt. 31) at 7. Plaintiff submits that it was therefore unreasonable for the ALJ to discount his pain testimony by relying on the absence of evidence pertaining to the consumption of pain medication, while overlooking actual evidence of multiple invasive medical and surgical pain-related interventions, in order to discount his pain testimony. *Id*. at 7-8.

The ALJ's evaluation of Plaintiff's pain and functional limitation testimony began with the now-familiar statement that "the claimant's statements concerning the intensity, persistence and

limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." *AR* (dkt. 14) at 29. Finding that "the objective findings of this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations," the ALJ then goes on to narrate, for more than a full page, Plaintiff's extensive and extraordinary medical and surgical intervention history between 2011 and 2013 – all of which was focused on attempting to abate Plaintiff's persistent pain and remedy his physical limitations. *Id*. at 29-30. However, the ALJ did seize upon an occasion in November of 2013, during which Plaintiff reported that his pain level on that occasion was only a 2, on a scale of one to ten. *Id*. at 30. On the other hand, the ALJ also noted that Dr. Aryanpur, Plaintiff's second neurosurgeon, had recommended that Plaintiff avoid "repetitive craning or twisting of the neck or above shoulder activities . . ." *Id*. Reliance was also placed by the ALJ on the notion that treatment notes from a March 2014 medical visit indicate that Plaintiff had discontinued any use of pain medication. *Id*. Lastly, the ALJ noted that because Plaintiff can do things such as "taking out the trash, preparing meals, mowing the lawn, doing dishes, shopping, laundry, attending church and school functions, helping his daughter with homework, and spending time with friends and family," as well as for having expressed interest in attending a retraining program, that Plaintiff's "willingness to seek employment is indicative that at times he felt he was both physically and mentally able to work despite his alleged impairments." *Id*. at 33.

Unless the ALJ finds evidence of malingering, the ALJ must express clear and convincing reasons for rejecting a plaintiff's testimony of subjective pain. *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). However, in cases where "the ALJ finds that claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the [reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)). The following may be considered in assessing a claimant's credibility: (1) the person's reputation for truthfulness; (2) inconsistences in either their own testimony or between their testimony and conduct; (3) daily activities; (4) work record; and (5) testimony from physicians and third parties

8

concerning the nature, severity, and effect of the claimant's condition. *Id*. at 958-59.

The court finds the ALJ's reasoning for rejecting Plaintiff's pain and functional limitation testimony to be neither clear nor convincing. Further, the ALJ failed to express sufficiently specific findings to enable this court to conclude that the adverse credibility determination was not arbitrarily rendered. After all, Plaintiff had suffered through three automobile accidents, a coma, decades of seizures that involved falling to the ground, repeated impacts and traumas to his head and spine from car accidents and falling during seizure activity, multiple brain and spinal surgeries, complications and infections stemming from those surgeries, as well as medical, surgical, and therapeutic interventions all of which were aimed to address his persistent pain. Here, the ALJ found no evidence of malingering, and the ALJ did not make any inquiry into Plaintiff's reputation for truthfulness; instead, the ALJ relied on isolated fragments of record, such as noting that on one occasion Plaintiff reported not being in pain, or that on other occasions Plaintiff can help prepare a meal or shop for groceries. Likewise, the court is unconvinced that Plaintiff's expression of interest in attending a retraining program at some point means that his "willingness to seek employment is indicative that at times he felt he was both physically and mentally able to work despite his alleged impairments." *AR* (dkt. 14) at 33. The court finds that being "physically and mentally able to work" is not a conclusion that can logically flow from someone's mere expression of interest in attending a retraining program at some unspecified time in the future. Thus, the court finds that the ALJ erred in rejecting Plaintiff's symptom testimony about his pain and functional limitations.

**Nature of Remand**

Plaintiff submits that his improperly discredited symptom testimony is "facially work-preclusive and is an independent reason for this court to consider [the] exercise of its discretion to remand this matter for award of disability benefits." *Pl.'s Mot.* (dkt. 25) at 16-17. The court disagrees. First, it should be noted that in cases where "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded [for further proceedings]." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). On the other hand, it is also true that a district court may modify or reverse a decision by the Commissioner, "with or without

remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014). Generally, remand with instructions to award benefits has been considered when it is clear from the record that a claimant is entitled to benefits. *Id*. The credit-as-true doctrine provides that when "there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony . . . [instead] we will . . . take that testimony to be established as true." *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988).

In the instant case, it cannot be said that there are no outstanding issues that must be resolved before a proper disability determination can be made, nor that it is clear from the record that Plaintiff would be precluded from all work, even sedentary work. Indeed, the court will note in this regard, after having carefully reviewed the function reports submitted by Plaintiff and his relatives, as well as the the transcript of the hearing before the ALJ, that the record as to Plaintiff's functional limitations and resulting capacity has been poorly developed. Not even an approximation of the limits of Plaintiff's range of motion, or the duration or persistence of his pain, was established at the hearing before the ALJ. Given the fact that Plaintiff has suffered multiple traumatic brain injuries, as well as the fact that he has been diagnosed with having borderline intellectual functioning, *see AR* (dkt. 14) at 704-708, the ALJ was under a heightened duty to fully and fairly develop the record.

While it is true that a plaintiff bears the overall burden of proving disability, the ALJ in a social security case bears an independent and "'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). Importantly, this duty extends not only to unrepresented claimants, but also in cases where the claimant has representation. *Smolen*, 80 F.3d at 1288; *see also Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003). This duty is heightened where the claimant may be mentally ill and thus unable to effectively protect his or her own interests. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.

2001).

As part of this duty, the ALJ has an obligation to take reasonable steps to ensure that issues and questions raised by medical evidence, particularly evidence from treating physicians, are addressed so that the disability determination is fairly made on a sufficient record of information, be it favorable or unfavorable to the claimant. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1999); and, *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978); *see also* 42 U.S.C. § 421(h). The ALJ has not only the power, but the duty, to "conduct an appropriate inquiry" if the evidence is ambiguous or inadequate to permit a proper evaluation of a claimant's impairments. *Smolen*, 80 F.3d at 1288; *accord Tonapetyan*, 242 F.3d at 1150. If evidence from a medical source is inadequate to determine if the claimant is disabled, an ALJ may be required to re-contact the medical source, including a treating physician, to determine if additional needed information is readily available. *See* 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1); *see also Webb*, 433 F.3d at 687 ("[t]he ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence [or] the ALJ's own finding that the record is inadequate"). The responsibility to fulfill this duty belongs entirely to the ALJ; it is not part of the claimant's burden. *See e.g., White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001). The ALJ may "discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150 (citing *Tidwell*, 161 F.3d at 602).

The court's review of the hearing transcript leads to the conclusion that the ALJ's development of the record in this case was insufficient under the above-described standards. It appears that the ALJ considered the medical evidence to be either ambiguous or otherwise inadequate in order to substantiate Plaintiff's testimony; however, the ALJ failed to conduct the "appropriate inquiry" contemplated by *Smolen*. Instead, all of the exchanges which took place at the hearing between the ALJ and Plaintiff, as well as those between Plaintiff and his counsel, were both vague and unfocused, depriving this court of any ability to determine whether or not Plaintiff's improperly discredited symptom testimony "is facially work-preclusive," as Plaintiff contends. All that can be gleaned from record in this regard is that it hurts to some degree when

Plaintiff moves his neck up and down; that he experiences unspecified amounts of pain in his shoulders, neck, and back at an unspecified frequency; that there is some degree numbness in his hand and wrist (without it being clear what the resultant limitation might be); that he suffers from blindness in half of his visual field (without it being clear how that limits Plaintiff's daily activities); and, that he continues to experience seizures at a likewise unspecified frequency. Thus, remand for further proceedings is necessary.

### Remaining Issue

Plaintiff has also assigned error to the ALJ's failure to account for his right hemianopsia (the blindness in half of his visual field) when formulating the RFC. *Pl.'s Mot.* (dkt. 25) at 17-20. However, because the court is already remanding the case for further proceedings, including further development of the record, the court declines to address Plaintiff's remaining argument that the ALJ erred in the RFC assessment. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."). Further, the court need not address Plaintiff's other claim as it would not provide plaintiff with any further relief than already granted, and which can be addressed on remand. *See Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008).

### CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment (dkt. 25) is GRANTED, and Defendant's Motion for Summary Judgment (dkt. 28) is DENIED. The case is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: March 26, 2019

ROBERT M. ILLMAN
United States Magistrate Judge